3 Keys v. SRUtility Holding Company Mr. Guernsey  John A. Guernsey Who had control as a legal matter of the stock at the time transfers were made? The legal control was vested in the executors of the estate of Samuel Rappaport. Was that as a consequence of operation of law that gave power to the Orphan's Court to make determinations about or rulings about the disposition of that stock? Yet the stock had been owned by Samuel Rappaport personally in his lifetime, so it became property of the estate. And indeed, Your Honor, the executor, back in April of 2001, filed an accounting of all the transactions that occurred during his tenure. Let me try to be more specific in my question. One of the things that the district court said here was that this property was not under the control of the Orphan's Court, if I understood Judge Simandl's opinion correctly. That, therefore, the probate exception to the diversity jurisdiction didn't apply because it was property that might have been related somehow to the estate, but it wasn't under the control of the Orphan's Court. Under the law of Pennsylvania, since this stock was the property of the estate, did the Orphan's Court have the power to enter orders and take control of, sequester, do whatever it wanted with the stock itself? At the time these proceedings, when the Orphan's Court proceedings first transpired, this was property that belonged to the estate and was under the control of the executor, along with numerous other property and shares of stock that had been owned by the decedent during his lifetime. Now, the property was sold, essentially, to a number of different individuals in 1997, and in 2001, the executor was then filing an accounting which was explaining what had been done with the property. Now, it's common rule that the transfer, those transactions, included self-dealing transactions and were not lawful, that, indeed, the transactions by Mr. Passiano were taken without the authority of the court, right? Yes and no, Your Honor. To understand the proceedings, what happened is, in April 2001, an accounting is filed, and then in June of 2001, objections by the beneficiaries were filed to that, 27 or 28 in number. That is essentially the complaint that's at issue in the Orphan's Court, and there's been no adjudication on those objections. That was filed in June of 2001, and at the same time, a petition to remove the two executors was filed on the basis of all of those objections. Is the Orphan's Court currently, can you tell me, has it taken back the stock from Mr. Passiano? No, it has not. Is that under consideration as a remedy? We're not in that part of the proceeding. We haven't gotten there yet. If you say we're not at that part, as I read the record, it seems like, having ruled that these were unlawful, the Orphan's Court is at the point now of deciding, what do I do to unwind an unlawful transaction? Am I wrong that that's what's going on? The parties have a disagreement on that, Your Honor, because we say that the objections, one of which includes this stock sale, haven't been passed on at all yet by the Orphan's Court. The Orphan's Court took a petition on a matter of immediately replacing the executor, but based on none of the 27 objections that were filed, but on a subsequent matter that occurred six months later, which was the executor taking a repayment of $220,000 from the estate for a loan that he had made to the estate. That was the subject matter of the immediate removal petition, which is all that's been adjudicated. How can you say that when the Superior Court appellate panel specifically cited, I mean, the Orphan's Court judge specifically cited the stock transfer as unlawful and self-dealing. The Superior Court appellate panel specifically cited the stock transfer as unlawful and without the authority of the court, and the Supreme Court of the Commonwealth of Pennsylvania affirmed with that comment the appellate decision. How can that be viewed as anything other than a ruling that this was a self-dealing unlawful transaction, and now adjudicated as such both by the Orphan's Court, the Superior Court appellate panel, and the Supreme Court affirming? Well, because again, Your Honor, the way that the issue arose was a hearing on the emergency petition. That was a collateral order recognized as such under Pennsylvania rules. There was not a right of appeal to that order. We petitioned for an allowance or for permission to appeal first to the trial court. That was denied. Then to the Superior Court. That was denied. So it was the equivalent of an interlocutory order. I'm sort of dominating here, so I'll stop after this question. Are you suggesting to us, Mr. Guernsey, that we could, in the face of the Orphan's Court explicit statement about that being an unlawful transaction, and the Orphan's Court apparently being in the process of preparing to do something about that- That's correct. And the Superior Court appellate panel upholding that expressly, and the Supreme Court of Pennsylvania upholding that, that we could say, well, it didn't come up the right way, and therefore we can take jurisdiction and ignore those statements of the state? What I'm suggesting, Your Honor, is that the issues that were undertaken by the Pennsylvania Supreme Court on a writ of King's bench, King's bench jurisdiction, again, a very unusual circumstance, but there were two issues. One concerned an in-camera proceeding that took place between the trial judge and the beneficiaries outside the presence of opposing parties and opposing counsel. And you lost all that, right? Pardon? You lost all that. That's right. And the second issue was the removal of the executive. Those are the two issues that were addressed. The issue- So let's all think all that other stuff, even though it's part of the holding that- It is part of the holding, but it was not necessary or material to the holding. Would it be necessary to grant the relief that you seek to make a contradictory finding? In other words, to grant the relief, which is access to the $900,000 in dividends, don't we have to make a contradictory finding to the one that was made in the state courts? Well, absolutely not, Your Honor, because, again, there's no question that Three Keys, which was not a party to any of those proceedings in the state court, there's no question that Three Keys is, at this moment, holding the stock, and dividends are being paid, and they are, at this point, the lawful owner of the stock. But the Orphan's Court has concluded that the stock was sold without a court order and is invalid, and the court has said it's invalid, and that issue was appealed. The appellate courts have said it's invalid. That issue wasn't appealed, Your Honor. I mean, what was appealed? What was appealed is the removal of the executor, but the removal was based on a finding that the stock sale was invalid. But that's not entirely true, Your Honor. The removal was based upon the executor taking $220,000 as repayment of a loan, which the court found there was not sufficient evidence of that loan, and that that was the improper act. As a pattern… But there were a series. There were a series. There were a series, Your Honor. That was one of them. But in passing, in making a decision, the court looked at the entire dealing of Mr. Bassiano. But we objected to that, Your Honor, because… But you objected to that, but the court explicitly said that there was self-dealing, that the stock transfer occurred without prior court approval as required by state statute. Now, my question, and I think Judge Kent's question, is are we going to make a different conclusion? Are we going to make a different finding? Is the federal district court going to make a finding that's distinct from that that was already made in the state courts? Well, what we would ask the federal district court to do here would be to adjudicate the rights of three keys as a shareholder of the corporation, and specifically at this point with regard to the receipt of dividends that have been improperly withheld. It may be that in the exercise of its discretion, the district court will want to wait and see what is ultimately done in the orphan's court. But we're not there, and that's one of the reasons, not having a final judgment. We're not there, and that's why it shouldn't have been dismissed. Let me ask you one other question, which is jurisdiction. I know your time is running, which is the probate exception. I wonder, as I read this case, this is really the type of decision, the type of issue that is almost always considered in probate courts. Doesn't the probate court have the power to address the question of the stock sale as well as the dividends that resulted from that stock sale? No, we do not believe that it does, Your Honor. Indeed, Three Keys is not only not a party in the probate court, but there was a motion to join them, and that motion was denied. It was denied because you guys resisted it, didn't you? We did, because they don't properly belong before the orphan's court. So how can you say, wait, we didn't have a fair opportunity to address this in the orphan's court when Three Keys resisted being joined in the action and then later filed its own petition? Your Honor, the motion to join them wasn't made until after the hearing that had already taken place. In other words, it was trying to bring them in and now make them subject to something they didn't get a chance to participate in in the first instance. And you have filed a petition, am I right, for relief in the orphan's court? We simply did that in order to protect ourselves because of the dismissal of this case. But you did it, right? We did file it. It has not been acted upon. Had Three Keys been a party to the case and the decision had been the same, of course you wouldn't be making the argument. The orphan's court would have, would it not, jurisdiction to address not only the stock transfer but as well the $900,000 dividends that you are now seeking access to? Your Honor, again, they haven't gotten there. We don't have this final judgment. But, yes, they would have jurisdiction to decide what the remedy would be. But withholding monies now is essentially a form of prejudgment attachment because there's been no judgment that's been entered. And Three Keys is being wrongfully denied dividends that belong to it at this time. Down the road, we don't know what will happen. Well, when you say wrongfully, of course that assumes that everything that the orphan's court and the appellate panel and the Supreme Court of Commonwealth of Pennsylvania have said is erroneous. Right? Because they've said Three Keys never had a right to own the stock in the first place. They've said they got the stock because Mr. Bassiano is, not to put too fine a point on it, a bad actor. That he breached his fiduciary duties in gross and repeated ways. And, therefore, Three Keys never should have the stock. So, when you say it's wrongfully having its dividends withheld, that assumes the very point that was decided against Mr. Bassiano. And, at least by implication, if we take Judge Sumano's view, against Three Keys all the way up through the Commonwealth's court system. Doesn't it? No, Your Honor. This issue, the issue of the sale of the stock and of the consequences and all of that. There has not been a full and a complete hearing on that issue. It, again, is one of the objections that has never been ruled upon. Four days of hearings in front of the orphan's court. Dealing with the limited issue, Your Honor, the limited issue of. . . Nobody put evidence about the stock sale in? That was just like the orphan's court judge out of thin air said. No, Your Honor. The only evidence. . . No one else talked about? The only evidence that was submitted. . . The evidence that was submitted. . . Because it was not a part of the subject matter of the petition. And the court had sustained objections to including material that was not within the scope of that immediate emergency petition. Which limited it to the $220,000 repayment. There was a request to put in evidence to show pattern of conduct. And, on that basis, the trial court allowed it. It was very cursory. It was not a complete presentation of all of the evidence that the court would consider. Because the court could have looked at the transaction and reached a number of different conclusions. And we submit we'll have that opportunity when we're back and have these objections heard in full. Did Mr. Bassiano testify in that case? In the orphan's court? He did, Your Honor. He did? And had an opportunity to say, no, that's not true. That the stock transfer was actually a legitimate agreement between the parties? He had an opportunity and the documents were presented. The actual stock purchase agreement was made a part of the record. Showing all of the parties that were the purchasers and the consent of all the beneficiaries to all of those purchases had been achieved. But there would have been more evidence because we were still undertaking discovery in all of the issues in the case at the time of the emergency hearing, Your Honor. Thank you, Your Honor. Thank you very much, Mr. Grinzey. Mr. Schaffer? Good morning, Your Honors. My name is Ronald Schaffer. I represent the Appalese and may it please the court, just so I can address some of the issues that the court raised in the questioning of Mr. Grinzey. In fact, what is currently pending before the orphan's quarter is exactly the types of remedies that Your Honors asked Mr. Grinzey about, which is seeking the return of the stock, seeking the disgorgement of the dividends, and seeking to get back any of the money that was obtained by Three Keys as a result of this illegal stock sale. You might touch on the question whether Three Keys should be held or should be precluded based on the orphan court's decision. Yes, Your Honor. I believe that the operative analysis would be, and the one that Judge Simandl used in his opinion, would be with respect to issue preclusion. And with respect to issue preclusion, there are three requirements. One is that the issue sought to be litigated in the district court was identical to an issue that was previously litigated here in the orphan's court. And you might elaborate on that because the issue didn't seem to be identical. The issue before the district court is access to $900,000 in dividends. In the orphan's court, the issue was removal of an executor. Well, Your Honor, I submit that the issue is in fact identical, and let me state what I believe the issue to have been. That the sale of stock from Richard Bassiano as the executor of the estate of Samuel Rappaport to his children was an illegal stock sale. Now that was the issue that was litigated. That was the issue that was decided in the orphan's court. What do you make of the argument we just heard from Mr. Guernsey that that wasn't the issue that was before the orphan's court? Well, Your Honor, I submit that these are the types of issues that Mr. Bassiano made in the appellate courts of Pennsylvania. I think that this court is required to look at the record that was established by the orphan's court, that was upheld by the Superior Court and the Pennsylvania Supreme Court, in which those courts specifically judge Lawler in his findings of fact and conclusions of law. We've identified them. I have them here. I'm happy to read them to you. There were specific findings with respect to the stock sale of SR Utility. And contrary to what Mr. Guernsey suggested, this petition, the adjudication, which was finally decided and went up on appeal, was not only over some $220,000 undocumented loan, which was found to be conversion of estate funds, but that the immediate removal of Mr. Bassiano was required because of the danger to the assets of the estate, in part because of this pattern of self-dealing that he had engaged in, including the sale of stock in SR Utility. Why didn't you folks take a cross-appeal with respect to the ruling that the probate exception doesn't apply? Well, number one, we believe that on the basis of the collateral estoppel issue that... On the subject matter of jurisdiction, let me just back out on that for a second. I understood you to argue to Judge Simandl, you can't get to collateral estoppel. You can't get to anything because, as a matter of subject matter of jurisdiction, the Federal District Court has no place here since this is within the probate exception to diversity jurisdiction, and Judge Simandl ruled against you. And if I'm right, he didn't appeal that, right? That's correct, Your Honor. Okay. Now, it's a given that you can't waive subject matter of jurisdiction. Correct. But I'm curious to know, as a practical matter, why did you guys not bring that before us? Well, two reasons, Your Honor. Number one is I believe that in the interim, the United States Supreme Court had decided the Marshall case, which was the Anna Nicole Smith case. And you thought that weakened your argument? We believed that it had an impact and, in fact, tightened up or made it more strict to invoke the probate exception. We submit that prior to that case, that was still a viable argument, number one. Number two, we believe that this Court, should you decide, that this Court has the ability to affirm on reasons other than were specifically identified by the lower court. So I submit that should this panel decide that that would be another reason to affirm the dismissal because there was no jurisdiction on it. But would we be wrong to view Marshall as saying that there's still a probate exception? It says it's narrow, but it doesn't say it disappeared. That's correct. I believe that it has narrowed the probate exception. It has not eliminated it. Do you have any question about whether the Orphan's Court has any power over the $900-some thousand in dividends currently held in escrow? No, I don't believe that there is any question. There is a line of Pennsylvania case law with respect to the Orphan's Court and probate proceedings in Pennsylvania that gives the Orphan's Court jurisdiction to get back property of the state that's been wrongfully transferred here by Mr. Bassiano to his children. I'm looking at page 143 in the appendix, and it's a docket sheet from the court in Bucks County, and it appears, maybe I'm reading the thing wrong, but it appears on May 26, 2005 that there's a petition for writ of sequestration, which looks like, are we talking about sequestering stock there? Yes, Your Honor. So there is a writ currently pending in the Orphan's Court seeking sequestration of the stock itself. That's correct, Your Honor. Now, that, I believe, was denied by the court, but what is pending before the court, and I believe that's the reason it was denied, we wanted it to be sequestered prior to the surcharge proceedings. See, where we stand now in the Orphan's Court is that we are waiting for a trial date with respect to surcharge proceedings. What is a surcharge? A surcharge proceedings is, in effect, having established the violations, having established, in effect, a viability here. On the part of the executor? On the part of the executors, that how should they be surcharged? What properties should they be returned? What monies should they be surcharged? What profits? It's really, and it's not, by the way, the ongoing surcharge proceedings is not just limited to the three keys. Three keys, as noted in the opinions of the court from the courts in Pennsylvania, was one of a multiple series of improper self-dealing transactions that Mr. Bassiano had engaged in. And so that proceeding would allow the Orphan's Court or give it the power to rescind any sales, any transactions, to bring back to the estate any monies that had been taken previously by the executors? That's correct. And, in fact, that's the specific reason for, in part, surcharge proceedings is to, if property of an estate is improperly transferred by an executor, whether to himself or to others, the surcharge is to get back that property, that the Orphan's Court in Bucks County has the authority to get the property back, even if that property is being held by third parties, even if the property is outside the jurisdiction of Pennsylvania. Am I right, though, that it's not just money you're trying to get back on behalf of the estate? It's the stock itself? That's correct. In effect, that because the transaction has been found to be illegal, it needs, in effect, is void, and that to the extent a third party here with three keys is holding the stock, it should either be voided or returned, and all profits, monies, and distributions and dividends. And, by the way, Mr. Bassiano's children already received $2 million from their purchase of three keys before the money was being put into dividends, into escrow. If Mr. Guernsey is correct, and three keys was not a party to the prior proceedings, so we send this case back, let's say, to Judge Simandl for proceedings that he were to prevail. And the Orphans Court then says, well, the stock transfer was completely illegal, invalid, and we need it back here. It's essentially too late, isn't it? If Mr. Guernsey prevails, if his view prevails, and he has access to the dividends? Well, I think in order for the case to proceed in the district court here in New Jersey, it would be directly contrary to the finding that the stock sale in the first instance was illegal. Well, I understand that that's your point. But I'm saying what if he prevails on the point that three keys was not a party to the removal proceeding? So this case has to go back because issue preclusion cannot be applied. Well, Your Honor, with respect to issue preclusion, the law in Judge Simandl specifically cited that with respect to issue preclusion, if the decision in the prior court was either the same party or one in privity with the party, that issue preclusion would apply. Our position is based on the record. It is clear that Mr. Bassiano was clear or three keys with Mr. Bassiano were clearly in privity with each other. This court in the Marin case says that privity is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include the other within res judicata. One relationship Wong held to fall within the concept of privity is that between a non-party and a party who acts as the non-party's representative. How old are the Bassiano children? They are adult children. They're probably in their 40s and 50s. And I think that the record and the evidence that was presented to the Orphan's Court is that Mr. Bassiano, this was a creation that he put together. He formed the company. He manages and operates the company. He operated the company. He funded the company. Does three keys have anything else other than resources from the Rappaport? There are. Mr. Bassiano has used as many rich people do for various tax planning purposes, has created other investments that he's put in his children's name for tax saving purposes. This is not the only asset that they have. But he admitted and he had a full chance to testify at the Orphan's Court. He did, in fact, testify. He testified that buying the stock, in effect, from himself as the executor was his idea, that he paid his money. He paid the money so his children could get the stock in three keys. What's the record about the ownership and the control of three keys? If you look at the findings of fact, and let me just say, Your Honor mentioned the concept of judicial admissions. On page, on page I guess 197, the findings of fact that Mr. Guernsey, on behalf of Mr. Bassiano, filed with the Orphan's Court, were a couple of things, specifically with respect to this transaction. It says, because the estate was in need of cash, Bassiano suggested that he purchase for his children a minority interest in SR utility. He goes on to say, and this is proposed findings of fact by Mr. Bassiano's own attorneys, Proposed finding of fact 227 on page 198. Also, on March 31, 1997, the estate sold 24% of its share as an SR utility to an entity affiliated with Bassiano's children for $2.4 million in cash. The next proposed finding of fact, by his own attorneys, Bassiano paid cash for the aforementioned interest. Now, you were saying he controlled, he managed. Yes. Where's that in the record? He controlled and managed three keys. The answer is, it was presented within the underlying case. If you look at the findings of fact and conclusions of law, let me just get it. It is, I suggest, implicit in the findings and conclusions where it follows. On March, finding of fact 61, on March 31, 1997, Richard Bassiano, as buyer, purchased for his children 24% of the outstanding shares of SR utility. Well, when it talks about purchased for his children, it was clear, based on the documents and the agreements that were presented to the Orphan's Court, the agreements of sale with respect to this illegal stock transaction, that it was between the estate and three keys. And so, having known that information, having had the entity three keys before them, the court nevertheless concluded that, in effect, this was a sale that he did for himself for the benefit of his children. So, I submit that there are numerous references to, for his children, clearly refers to three keys, because the underlying documentation that was admitted into evidence included the stock purchase agreements, which stated three keys throughout. The other parties in the Orphan's Court moved to join three keys as a party to the removal proceeding. The application was denied. Do you know why? Yeah, let me clarify, because we did not move to join three keys in the Orphan's Court for the removal proceedings. The motion that was filed... Was made by the other parties. No, well, the beneficiaries, the Rappaport family, filed a petition to join three keys after the adjudication of removal was issued. Because the reason... And so, therefore, it was... And I submit that the denial of the joinder is consistent with a finding by the Orphan's Court that there was, in fact, privity between Mr. Bassiano and three keys, and that, quite frankly, it was unnecessary to join them. The reason it was done, in an abundance of caution, after the removal, after it had already been decided that this was an illegal stock sale, was to ensure, again, belt and suspenders, that if necessary, we would have the party that technically had ownership of the stock. They resisted it. It wasn't because it was believed that they needed to be part of the removal proceedings. But by the court denying, the motion to join them can be interpreted as confirming what we believe to be the case, is that it is not technically necessary to join three keys. They were not... It was not an indiscretion. It was not. That's exactly right. That the Orphan's Court, on its own, has jurisdiction to reach out and get back estate property from third parties. Well, it doesn't... Doesn't it not? Apologize, may I? No, sure. Three keys folks have gone to the Orphan's Court and put themselves before the court with their own petition, in a related petition, correct? That's correct.  I mean, they're being represented by the same lawyers. They've always been represented by the same lawyers. It's the same lawyers that represent Mr. Bassiano. There is nothing from stopping them today. In fact, they have a petition, seeking to participate in those proceedings. Is the remedy that's sought in the district court, a sort also in the Orphan's Court? Access to the dividends? That's exactly right. They're asking, and when they file their petition, they're asking, you know, release the money in escrow, give us our dividends, etc. Mr. Schaefer, your time is up. Thank you very much. Thank you, Your Honor. Mr. Guernsey, you have three minutes for rebuttal. Thank you, Your Honor. Your Honor, to respond to a question that you raised about where in the record is all of this evidence about three keys and its corporate structure and the like, it's not in the record, and the reason it's not in the record is because, again, the hearing in June of 2002 was on the limited issue of the removal of the executor because of the $220,000 payment, and counsel has acknowledged that. In letters that were exchanged between counsel in preparation for that hearing in May of 2002, counsel expressly acknowledged that in the discovery we were taking, we were limited only to the issues that were going to be addressed in the emergency hearing, and then witnesses would be reproduced later again to be deposed on the other issues, one of which concerned the three keys transaction, and all of the evidence that was cited to you was from discovery that has come from that later proceeding. That all waits to be adjudicated when all of the objections are adjudicated by the Orphan's Court. Quick question about something that your opposing counsel said a minute ago. Is it accurate, just as a point of information, that three keys has been represented throughout by the same court? No, that is not correct. There is separate counsel for three keys in the proceeding before the Orphan's Court, and any issues concerning three keys, which included the effort to join three keys, three keys was represented by separate counsel in opposing that motion. We are representing them in the New Jersey action. That is correct. Your Honor, three keys has not had an opportunity to be heard. They had absolutely no reason nor opportunity. They couldn't have participated in the removal petition hearing if they had wanted to. They had no standing to be a part of that subject matter. That concerns simply the executors of the estate. So they not only didn't participate, they couldn't have participated, and at that time, the only issue that was of concern to the executors and the ones that they focused upon was whether, in fact, they should be removed or not. All of these other issues remain to be adjudicated and need to be adjudicated, and we don't have a final judgment for that reason, but in any event, three keys has been denied an opportunity to have any participation in this proceeding, to be able to come in and assert and defend its position. What do you make of the statement by Mr. Schaefer that the Orphans Court at least implicitly made a ruling that should be respected when it had before it a stock transaction that was between the estate and three keys, and it said in its findings that Mr. Bassiano was the purchaser and thus equated Mr. Bassiano with three keys? Well, again, that is the type of issue that had that been squarely presented and had three keys been there, there would have been additional evidence presented that it wasn't the case. The proposed finding, there's no question that Mr. Bassiano initially suggested that the transaction would be along the lines of a sale to a number of different entities, including his children, but in reality, Mr. Bassiano never purchased the stock and then resold it. The stock was sold by us or by the estate directly to a number of different people to include two of the beneficiaries, an employee of theirs, Mr. Kordek, and to three keys, and the documents absolutely enumerate and spell that out in that fashion. Who paid the consideration? Pardon me, Your Honor? Who paid the consideration? Three keys paid the consideration, Your Honor. Pardon me? Three keys paid the consideration. Three keys has numerous assets that have been accumulated over the years. No question that Mr. Bassiano has contributed some of those, but by virtue of successful real estate investments in other matters, they've earned profits and the like that are part of that corporation, and it's a viable ongoing corporation. Thank you, Your Honor. Thank you very much. The arguments are very helpful. We'll reserve judgment. Thank you all. Court will adjourn. Please rise. The court stands adjourned until this afternoon at 2 p.m.